STATE OF LOUISIANA         NUMBER: 567022 DIV: E

VERSUS                     22ND JUDICIAL DISTRICT COURT

LARRY BICKHAM              PARISH OF ST. TAMMANY

FILED:_____  _____
                           DEPUTY CLERK

STATE OF LOUISIANA

PARISH OF ST. TAMMANY

     **BEFORE ME**, the undersigned Notary Public, duly commissioned and qualified within and for the State and Parish aforesaid, personally appeared **Pete Snyder**, who after being by my duly sworn, said that:

1. He is an inmate at the St. Tammany Parish Jail.
2. That until the first week of December, 2016, he was housed in the same dorm with Kelvin Rushing.
3. That he and Kelvin Rushing quickly became friendly with one another.
4. That before the trial of Larry Bickham, Kelvin Rushing disclosed to him that he sold Lisa Gauthier and her brother-in-law, both powder cocaine and crack cocaine.
5. That Kelvin Rushing disclosed that he and Ms. Gauthier engaged in criminal activity together, including but not limited to selling and using cocaine and human trafficking.
6. That Mr. Rushing disclosed to him that Ms. Gauthier was the cause of the minor child being exposed to crack cocaine.
7. That before the trial of Larry Bickham, Kelvin Rushing disclosed to him that he had an unofficial deal with the prosecution for his testimony. Mr. Rushing disclosed that an exact number of years was not promised to him, but it would be around ten years.
8. That Kelvin Rushing disclosed to him after he gave testified as a State's witness that he did so only so he could obtain a sentence less than a life sentence.
9. That Kelvin Rushing disclosed to him that he fabricated his entire testimony at the trial in order to obtain his unofficial deal.
10. That Kelvin Rushing specifically stated that Larry Bickham did not manufacture or distribute crack cocaine from his residence.

Exhibit -2

11. That Kelvin Rushing disclosed that he never witnessed Larry Bickham smoke crack cocaine in front of the minor child.

12. That Kelvin Rushing disclosed that he was able to reach out to other State witnesses to testify that they witnessed Larry Bickham smoking crack cocaine in front of the child, even though that never occur.

13. That Kelvin Rushing disclosed that Ms. Navaire works as a prostitute for Mr. Rushing.

14. That Kelvin Rushing disclosed that he would have testified to anything requested from him by the State in order to secure the unofficial deal.

15. That Kelvin Rushing disclosed that he did not have any dealings with Mr. Bickham after he and Ms. Gregg started their relationship.

Pete Snyder

SWORN TO AND SUBSCRIBED, before me, this __7__ day of __Dec.__, 2016.

Notary Public

During an evidentiary hearing on that case Wednesday, prosecutors conceded that Irwin had a sexual relationship with a witness in the case and that he didn't disclose it when he began investigating.

"He should not have kept the case," Assistant District Attorney Collin Sims told 22nd Judicial District Judge William Burris in Covington. "The state concedes that."

Irwin's actions violated Slidell Police Department policy, Swann said.

If an officer has had a relationship with a witness in a case, "he is to recuse himself and bring it to his supervisor's attention," Swann said. "He would have been removed totally from the case."

That didn't happen in this case until months after Irwin began investigating the case, however.

When Irwin did tell his supervisors about his relationship with the woman, he was prohibited from working overtime or details and told not to talk to the woman further about the case, Swann said.

Irwin was not demoted from sergeant, Swann said.

Last month, defense attorneys for Larry Bickham notified prosecutors they had evidence – hours of taped phone calls between the witness and Irwin – showing he violated the prohibition on talking to the witness.

Assistant district attorneys brought that information to the Slidell Police Department, and a new investigation of Irwin has been initiated, Swann said.

Wednesday, prosecutors urged Burris to forbid the defense from bringing up some of what they acknowledged was on the tapes, including evidence that the relationship between Irwin and the witness was not consensual, that Irwin tried to enlist the woman to help find strippers for a bachelor party and that he promised to help her disappear.

"To go through every detail does nothing more than sensationalize and direct away from this (Bickham) case," Sims said.

But Bickham's attorney, Brian Dragon, said those details were crucial. "It has everything to do with" the cruelty to a juvenile case, he said.

Burris agreed.

"How could anything be more relevant?" he asked Sims at one point during the hearing. "The possible corruption of the case and bias can come in."

After Wednesday's hearing, Irwin told prosecutors he was "sorry for the trouble."

Irwin is not the only one alleged to have had an affair with the woman. She also has claimed a relationship with Dragon, a claim he flatly denied in a September hearing, according to court transcripts.

In an interview, Irwin's attorney, Julie Knight, insisted the relationship ended well before Irwin was assigned to the case and that he notified his supervisors about the relationship a year ago. She also said he never interviewed the woman without recording it and having another detective present.

Knight said Irwin's statements about helping the woman disappear were taken out of context and that Irwin was worried about her well-being.